# EXHIBIT C

1

1          UNITED STATES DISTRICT COURT
2          WESTERN DISTRICT OF WASHINGTON

3    AMAZON.COM, et al.,                    )
                                            )
4                        Plaintiffs,  ) No. C 05-1137 RSM
                                            )
5              v.                        )   Seattle, Washington
                                            )
6    CENDANT CORP., et al.,               )
                                            ).
7                        Defendants.  )
     _____)

8

9    BEFORE THE HONORABLE RICARDO S. MARTINEZ, DISTRICT JUDGE

10            REPORTER'S TRANSCRIPT OF PROCEEDINGS

11                    NOVEMBER 21, 2005

12

13

14   APPEARANCES:

15   For Amazon and A 9:              DAVID McDONALD

16   Also present:                    LYNN PASSAHOW
                                      DAVID HADDEN
17                                    MICHAEL FANDEL
                                      DOUG OLSON
18                                    JAMES FAZIO
                                      STEVE KORNICZKY
19

20

21

22   Court Reporter:             Laurene Kelly, RDR, CRR
                                 Room 600
23                               1010 Fifth Avenue
                                 Seattle, WA  98104
24                               (206) 553-1899

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.

                              ORIGINAL

              WITHOUT REPORTER'S ORIGINAL SIGNATURE
              THIS TRANSCRIPT IS NOT CERTIFIED

```
 1    SEATTLE, WASHINGTON                MONDAY, NOVEMBER 21, 2005
 2    HON. RICARDO S. MARTINEZ, DISTRICT JUDGE              1:40 P.M.
 3                          PROCEEDINGS:
 4              THE CLERK:  This is the case of Amazon dot com, et
 5    al. versus Cendant Corporation, et al., case number C 05 dash
 6    1137, assigned to this court.
 7              Will counsel please make their appearances for the
 8    record.
 9              MR. McDONALD:  My name is David McDonald for Preston
10    Gates on behalf of Amazon and A 9.
11              To my left is Lynn Passahow from Fenwick and West and
12    Mr. David Hadden from Fenwick and West in Mountain View.
13    Mr. Hadden will be arguing the motion for our side.
14              THE COURT:  Gentlemen, good afternoon.
15              MR. FANDEL:  Good afternoon, Your Honor.  My name is
16    Michael Fandel from Graham and Dunn.
17              To my right is Doug Olson from Paul Hastings firm, to
18    his right James Fazio, and to his right Steve Korniczky, all
19    from the Paul Hastings firm.
20              THE COURT:  And welcome to you gentlemen.
21              Counsel, we basically have two motions today.  Let me
22    tell you first of all the Court has received and had a chance
23    to review your motions submitted, the declarations that were
24    attached, the exhibits that came as part of the Court's working
25    copy of materials, and had even a chance to look at some of the
```

1    case law in this particular case.

2          Obviously the Court will consider and make a ruling

3    on the motion to transfer, first of all, because that will

4    affect what happens with the motion to dismiss.  In order to

5    maximize your time and give you an opportunity to argue, both

6    because the Court has not decided what ruling to make on the

7    motion to transfer at this point in time, let me suggest

8    that -- first of all the motion to dismiss is not very complex.

9    I would suggest you spend most of your time on the motion to

10   transfer.  All right?  But you can certainly spend some time if

11   you wish on the other motion as well.  All right?

12          Everybody ready?

13          MR. OLSON:  Yes, Your Honor.  I'm Doug Olson, and I

14   will argue the motion to transfer.

15          THE COURT:  Thank you, Mr. Olson.

16          MR. OLSON:  The first of the two cases in question,

17   the Delaware case, was filed first, alleging infringement of

18   Cendant's '370 patent by Amazon.  That patent basically

19   describes and claims a recommendation procedure, in other

20   words, other people who have selected the books you select also

21   enjoyed the following books, and in essence that sort of

22   generally describes the nature of the patent.  It's broader

23   than that in some other aspects, but I think in view of

24   Amazon's technology and their business that sort of describes

25   what it's about.

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1         THE COURT:  I don't buy any books from Amazon, never

2   have, but they always send me the recommended cookware because

3   of the cookware that I bought previously, so I understand.

4         MR. OLSON:  That's the same thing, Your Honor.

5         THE COURT:  All right.

6         MR. OLSON:  The -- there was some settlement

7   discussions, and then the Delaware case was temporarily

8   dismissed, and then -- I'm sorry -- the -- some settlement

9   discussions, and then it was reinstated, and then there was

10  a -- this case was filed, and along with this case there was a

11  press release by Amazon, and that press release indicated that

12  this suit was a direct response to the Delaware suit.  The

13  press release says, this suit was filed in direct response to

14  Cendant's refiling of their patent infringement suit.

15        Also it was indicated that this was the first time

16  any of the four patents in this suit had ever been sued on.

17  The spokesperson for Amazon said, this is the first time we

18  have asserted any of these four patents.

19        And furthermore it was made clear that they would not

20  have been asserted had Amazon not been sued in Delaware.  It

21  goes on to say, we would not have asserted them if Cendant had

22  not filed them against us.

23        And it was made clear that it was a defensive

24  maneuver.  It's purely a defensive measure.  So you can hardly

25  think of a better example of a defensive suit and a better

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1    application of the first-to-file rule.

2    Now, Amazon does not explain or justify the press

3    release in its papers, and they basically ignored it, and I

4    think that it's fair to assume that the very clear language of

5    the press release speaks for itself. This is a defensive

6    action. Now, it seems in this case that the law is clear that

7    the first-filed case should be the one that goes forward and

8    this case should be dismissed or transferred to Delaware.

9    THE COURT: Well, Mr. Olson, isn't part of the

10    problem there, though, with the first-to-file rule, the way I

11    understand it is it would permit a district court to decline

12    jurisdiction over an action when a complaint involving the same

13    parties, same issues has already been filed elsewhere. Is that

14    really what we have here?

15    MR. OLSON: I think it is, Your Honor. And I think

16    Amazon would argue that there has to be an exact identity of

17    issues and parties, and that certainly is not the law as we

18    understand it.

19    In the Google case we cited, for example, that case

20    involved a declaratory judgment action for infringement of a

21    trademark. It was filed in the Northern District of

22    California. The defendant A B W F filed a trademark

23    infringement action in New York and added five additional

24    parties. Now, that's very similar to this case because there

25    are four additional parties in Delaware action to those

6

1   involved in this action.

2       And in the Google action the court said the fact that

3   there were five additional parties did not prevent the

4   application of the first-to-file rule, and it pointed out that

5   Google had a similar theory of infringement for all of the

6   parties and thus the fact that there were a few more parties

7   was not going to work a situation where the first-to-file rule

8   could not be applied.

9       Amazon alleges a similar theory of infringement for

10  all of the parties in this case, and so we have almost exactly

11  the same situation as was present in the Google case; therefore

12  the fact that there are a few additional parties, some

13  additional Cendant parties, really shouldn't make any

14  difference and the first-to-file rule should be applied.  The

15  difference in the parties is not material to the application of

16  the rule.

17      Secondly with regard to the issues Amazon also says,

18  well, the issues are different in this case than they are in

19  the Delaware case, and they cite the fact that there are five

20  patents, four in Seattle, one in Wilmington.  Your Honor, as we

21  pointed out in our briefs, these patents are very similar and

22  this is much like the Mastercard case we've cited.

23      In Mastercard a suit was filed for misappropriation

24  of trade secrets and software licenses relating to a particular

25  type of software.  The second case was for noninfringement and

1   invalidity of patents relating to that same software and,

2   although facially one might think that those were two different

3   cases or had two different issues, one involving the licenses

4   and trade secrets, the other involving patents, which are sort

5   of the opposite of trade secrets, the court held basically it's

6   the same thing.  It's the same dispute, the same general

7   operative facts which are driving both cases, and so they held

8   that, although they weren't exactly mirror images of each

9   other, it was appropriate to apply the first-to-file rule on

10   the basis that the issues were the same.  And we think that's

11   the situation here.

12           Another case is the Syngenta case that we've cited.

13   Now, there the court noted that there was an overlap that was

14   sufficient.  One case was basically a patent infringement case,

15   the other case was an antitrust case, but the court held that

16   the root issues were close enough so that the two cases could

17   be tried together.

18           Now, what do we have in this case?  First of all, in

19   Delaware the '370 patent, as I indicated, was a patent based

20   upon this recommendation procedure, and it's a patent that

21   relates to doing business on the Internet.

22           The '141 patent in this suit is another patent that

23   relates to doing business on the Internet, and that patent also

24   has a recommendation procedure.  In that patent the

25   recommendation is made by an affiliate who will recommend

8

1    products or services of the company that they are an affiliate

2    for, so again there's a recommendation that will steer the

3    Internet customer to goods and services of the patentee.

4            Then there's the -- in addition there's the '399

5    patent, which is on a way of protecting your credit card

6    number; the '079 patent, which is on a -- just a shopping cart,

7    another method of facilitating business on the Internet so that

8    when you make your purchases it facilitates making more than

9    one purchase or more than one selection during a particular

10   session.

11           The '609 patent directs a customer to the areas which

12   will be of particular interest to that customer based upon

13   buying patterns, and buying patterns is connected with the

14   basic recommendation procedure of the '370 patent, because

15   that's what it's based upon.  It's based upon buying patterns

16   of other people who bought the same book that you did, and then

17   it directs you to those other things.

18           So basically what these patents are all related to is

19   doing business over the Internet where a customer logs in, has

20   a chance to select from various items which are offered by the

21   seller, and is directed in one way or another to items which

22   might have most interest to him, so there's a lot of similarity

23   between these various patents, particularly with regard to the

24   recommendation method and particularly with regard to the

25   buying patterns, which is part of the '370 patents, and also

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

9

1    it's a specific part of the '609 patent, which is a browse

2    graph, and basically the browse graph simply directs you to

3    areas that you would be interested in based upon the initial

4    selections you make when you enter the website of the company

5    that's doing the selling.

6          So there is a whole lot of similarity between these

7    various cases and the patents at issue, Your Honor.

8          Now, as indicated before, in view of the fact that

9    this was simply a defensive action filed in response to the

10   Delaware case, the law clearly indicates that under the

11   first-to-file doctrine this case should be dismissed or

12   transferred to Delaware, and we would request that relief from

13   the Court.

14         In addition it would be proper to transfer this case

15   under the forum non conveniens theory. The key factors in that

16   determination are judicial economy. Judicial economy may be a

17   determinative factor, even if the convenience of the parties

18   and the -- and convenience of the witnesses were to lead to a

19   different result, and that's the holding of the <u>Regents of the</u>

20   <u>University of California versus Lilly</u> case, which is a federal

21   circuit case, and we've cited that in our brief.

22         Also the AT and T case which we've cited indicates

23   that, even if all of the other factors are near equipoise,

24   still it would be proper to transfer the case if there was a

25   strong relationship between the cases. And the AT and T case

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1    we've cited also indicates that judicial economy is one of the

2    important issues that should be considered.

3         Now, with regard to the issues of judicial economy,

4    we have five patents in this case, Your Honor, and there will

5    be five Markman hearings, and there will be possibility of,

6    particularly between the '370 patent, which is in Delaware, and

7    the four other patents, which are now the subject of the action

8    in this case -- there's definitely a possibility that there

9    will be overlapping of the issues.

10        Certainly the term recommend is used, as we've

11   indicated in our brief; so -- in other places the words might

12   not be exactly the same, but the claim construction issues are

13   going to be very similar because they're similar processes for

14   similar purposes for Internet commerce.

15        So I would submit that it's incredibly important from

16   a judicial economy standpoint to have one court dealing with

17   all of the issues of claim construction in a Markman hearing.

18        Secondly discovery issues.  It's important, I think,

19   Your Honor, to have consistency in the approach to various

20   issues by the parties.  The parties should not be taking a very

21   constrictive approach in one case and seeking broad discovery

22   in another.  I think that can best be handled by having all of

23   the cases in one court before one judge, rather than the

24   possibility of having a different approach taken to similar

25   issues in the two cases.

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

11

1          And I think that certainly when we come to the issue

2    of trial it would be much more efficient to have these issues,

3    with the same parties and essentially the same patents, all

4    directed at the same subject matter, just tried once instead of

5    twice, as would be the case if these cases continue to go in

6    separate courts.

7          The center of gravity analysis was carried out by

8    both parties.  There's a little bit of a difference there.  I

9    think one of the big differences is that the -- none of the

10   center of gravity factors considered by Amazon included

11   judicial economy, and we think that's an important thing.

12          Now, in terms of convenience of the parties, there

13   are some parties -- and if I may approach the board here, Your

14   Honor.

15          THE COURT:  You may.

16          MR. OLSON:  Starting with Seattle, where this case is

17   pending, we then have the Delaware case, and we made this

18   insert, and I hope I'm not offending the Court by showing this

19   on a map.  I've been in the eastern area many times.  I kind of

20   keep forgetting just how close those states are and how they're

21   arranged.  I had always forgotten that Delaware is kind of

22   cozied up both to New Jersey and also to Pennsylvania.

23          But in any event this is Wilmington.  We have

24   calculated these distances by several means.  They come out to

25   just a little over or just a little under a hundred miles.  We

1    would not object to the service of process to any of these
2    cities, Norwalk, Parsippany, and New York, on the basis that
3    there's a little bit more than a hundred miles, and I think
4    that particularly most of the people are located in Parsippany
5    and they would easily be subject to the court's jurisdiction in
6    Delaware, based upon my calculations.  Again the area covered
7    back there and probably about half or a third the area that the
8    State of Washington covers.

9        Now -- and then we have Chicago, Your Honor, and
10    Chicago is more than a hundred miles from the courthouse in
11    Delaware but it's still a lot closer than the -- a lot closer
12    than going all the way to Seattle.

13        So certainly for all of the Cendant parties the
14    Delaware courthouse is much more convenient.

15        Now, there -- the location of the infringement, Your
16    Honor, is another important factor.  As we've indicated in our
17    papers, the infringement primarily -- the alleged infringement
18    by Cendant primarily takes place in the Northeast area around
19    Parsippany, and so that's an important factor in all the
20    analyses that people look at.

21        THE COURT:  Counsel, before we leave the factor
22    involving convenience of the parties and of the witnesses, you
23    have not identified any nonparty witnesses at this point in
24    time.  Understandably so at this stage in the game.  Let me ask
25    you this:  In reading I think it was <u>Decker Coal Company versus</u>

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1    the Commonwealth, sets out the eight factors that you're

2    talking about and that you point to in your moving documents,

3    when the Court looks at all these eight factors, when you're

4    looking at the convenience of the parties and the witnesses, in

5    this particular case, understanding that there may have to be

6    Markman hearings, that there will have to be Markman hearings

7    and trial testimony as well, can the Court under the statute

8    you're looking at consider the fact that nonparty witnesses

9    will necessarily have to appear for both the Markman hearing

10   and for trial, even if the defendant has not yet named those

11   witnesses?

12           MR. OLSON:  Your Honor, that's one of the factors.

13   Now, a number of courts have addressed that in various

14   different ways, and in fact the case with Amazon, that Amazon

15   is involved in noted -- case that Amazon is involved in -- and

16   I'll try to get the cite for you in a second, Your Honor --

17   noted that Amazon had identified a lot of nonparty witnesses

18   and it was pretty hard to evaluate whether that was accurate at

19   the time and whether they would actually be involved in the

20   trial and, if so, how that would occur.

21           A lot of times I think nonparty witnesses testify by

22   deposition, either reading of the deposition or videotape,

23   because it may be possible to subpoena them for their

24   deposition but to get them to attend a trial is not so simple,

25   and in my experience, if the nonparty witness is willing to

1   voluntarily go to a trial, even though there's no subpoena
2   power, that really isn't a major inconvenience in today's world
3   where people are able to schedule trips to trials all over the
4   country.

5        So I think in the limited case where there's a
6   nonparty witness who's willing to cooperate with you, who's
7   willing to come to trial, it's almost in the category of party
8   witnesses or expert witnesses who have some interest in the
9   outcome of the case and are willing to come to trial.  So I
10  don't think that probably makes too much difference.  There
11  may -- I'm sorry, Your Honor.  It was the Pinpoint versus
12  Amazon case, and that's cited on page 4 of our reply brief.

13       And particularly the Court observed that Amazon
14  failed to provide evidence that former employees' testimony was
15  not cumulative and would not be provided voluntarily.

16       THE COURT:  I guess, Mr. Olson, my question was more
17  directed towards the defendants' nonparty witnesses.  I don't
18  know if there will be any.  Having handled the lengthy Markman
19  hearing not too long ago, I assume that there's always experts,
20  there will be nonparty witnesses from the defense perspective.
21  Is it more convenient for them to be closer to the East Coast
22  than it is closer to the West Coast?

23       MR. OLSON:  Your Honor, we haven't -- we have not
24  selected our experts yet, and I would expect that it would be
25  more convenient for them to be closer to the East Coast, but I

can't really make that representation, Your Honor, because we simply don't know who they are; and no discovery has occurred in this case, so we can't really identify specifically witnesses who would be attending the trial on our behalf or third parties.

And that's apparently the situation with Amazon also. With the exception of a couple of inventors, I don't think they have been able to -- and a couple of patent attorneys I don't think they have been able to identify anybody, and I think the inventors and the patent attorneys certainly would be in the category of the cooperative third parties.

THE COURT: I don't want to take up too much of your time, counsel. You're running out of time. I don't know if there's --

MR. OLSON: Yeah. I just want to make a couple quick points, Your Honor.

In terms of the pendency of related litigation, which is a factor, this is a factor we think is important. It falls under, I think, the issues I discussed before regarding judicial economy, and I think this is a factor that really hasn't been touched by the brief of Amazon. We think it's an important.

The public interest, all of the parties are corporations of Delaware, so there's an interest certainly in the State of Delaware in having corporations which are

1    incorporated there in front of it for these issues.  And then,

2    finally, the familiarity of the court I would guess is pretty

3    much of a neutral issue.

4           So I think the key issues here are the pendency of

5    the litigation, the judicial economy, and the fact that there

6    is a strong -- we have five parties, don't know how many people

7    would be involved, but they are all pretty much located right

8    in the Northeast, and it would be much more convenient for them

9    to be in attendance at trial there than to have to come or to

10   have the opportunity to come to Seattle.

11          Thank you, Your Honor.

12          THE COURT:  One last question, Mr. Olson.  I just

13   want to double-check.  You do agree that the burden -- you can

14   try to sway the Court in this case -- is on the defense.

15   Correct?

16          MR. OLSON:  Well, we're bringing the motion but I

17   think the -- I don't think that there's any presumption that

18   just because the case is filed that it is the more convenient

19   forum, and I think, in view of the press release, whatever

20   presumption might be there is more than overcome by, you know,

21   the press release that it was filed as a defensive measure as

22   opposed to something for convenience.

23          And, Your Honor, I would point out that in the notice

24   of related actions the Delaware case -- this case was

25   identified, and in the second-to-the-last sentence it indicated

1     that the -- that this case, civil action number 205 CV 01137

2     RSM, involves substantially the same parties as in the Cendant

3     case, so we have an admission that it's substantially the same

4     parties, Your Honor, so I think that admission plus the

5     admission in the press release over -- outweigh and overcome

6     any presumption that there might be that this is an appropriate

7     venue.

8            THE COURT:  Thank you very much, counsel.

9            What I'll do is we'll have your opponent's response

10    simply to the motion to transfer.  Then if anyone over there

11    wants to argue about the motion to dismiss, we have a certain

12    period of time we'll get into that.

13           MR. HADDEN:  Good afternoon, Your Honor.  Dave Hadden

14    for Amazon dot com and A 9.

15           Let me start, Your Honor, with your last question.

16    And, as the Supreme Court said in Gulf Oil, when a plaintiff

17    sues in their home court on their home turf, that choice is

18    entitled to a very strong presumption.  It should not be set

19    aside lightly.

20           Now, Cendant has pointed to this press release as

21    some reason to set aside that presumption.  There is nothing

22    nefarious about Amazon's press release.  Amazon had a public

23    policy of not hindering web commerce by asserting patents.  It

24    files for patents, prosecutes them; it obtains them as a

25    defensive deterrent measure.

1        I think, as Your Honor knows from a recent case

2   involving some insurance litigation, Amazon gets sued a lot on

3   patents and it needs some defensive protection.  That's why it

4   acquires patents.  So when it got sued by Cendant on patents it

5   used its defensive arsenal to sue back.  There's nothing

6   nefarious about that.

7        And to put out a press release to alert the rest of

8   the web community that this was not signalling a change in

9   Amazon's patent strategy was not now going to go out and attack

10  people unilaterally.  That was the purpose of the press

11  release.

12       There is nothing about that press release or those

13  actions that brings this case into the first-to-file rule.  As

14  the Ninth Circuit said in the Pacesetter case, the

15  first-to-file rule applies when there are duplicative lawsuits

16  pending in two jurisdiction, and it defines what a duplicative

17  lawsuit is.  That is one where, if one of the suits is

18  determined, it will leave little or nothing to be determined in

19  the second suit.

20       We're not even in that ballpark.  Whatever happens in

21  Delaware is not going to determine one issue in this case and

22  vice versa.  The Delaware case involves a single patent that's

23  held by Cendant Publishing.  They're accusing Amazon of

24  infringing that patent.  The only issues in that case are the

25  validity of Cendant Publishing's patents and the operation of

1  certain features in Amazon dot com's website. None of those

2  issues are in this case, and Cendant Publishing is not even a

3  party to this case.

4        Now, in this case involving four patents, three of

5  which are owned by Amazon -- one is owned by a subsidiary A 9,

6  and the issues involve the operation of the defendant's

7  websites, Avis, Budget, Orbitz, Trilegiant, and Cendant. None

8  of those companies are parties in Delaware. Their technology

9  is not at issue in Delaware. Amazon's patents are not at issue

10 in Delaware. And A 9 is not a party in Delaware.

11       So of the eight parties to these collective suits the

12 only common party is Amazon dot com.

13       THE COURT: Mr. Hadden, you did file a notice of

14 related case back there.

15       MR. HADDEN: We did, Your Honor. That was because

16 actually Cendant didn't file one as was required by the local

17 rules back there relating to its original case that it filed

18 and then dismissed, so to fill that gap we filed one

19 identifying both the previously-filed Cendant suit and, out of

20 an abundance of caution, we notified the court that there was

21 another suit pending out here. That's not an admission. The

22 parties are who the parties are.

23       THE COURT: Isn't it true, though, that, even though

24 these patents -- there are five patents, as you indicate, one

25 back there in the Delaware matter -- that they are all really

1    interrelated?

2         MR. HADDEN:  They're not related at all, Your Honor.

3    Four of them out here are related to inventions that were done

4    by Amazon and its employees in developing Amazon's business.

5    The patent back East is owned by Cendant Publishing.  It has

6    nothing to do with technology developed by Amazon.  There's no

7    relation between the two.

8         The only relation that Cendant points to is that they

9    all have to do with doing business on the Internet.  But

10   there's probably a hundred cases pending in this country about

11   doing business on the Internet, and the theory that they should

12   all be consolidated because of that level of commonality is

13   just sort of nonsense, Your Honor.

14        Amazon must be involved in five different patent

15   cases right now involving business on the Internet and no one

16   has suggested that those should all be consolidated.  That is

17   the only overlap they have pointed to, and they have not cited

18   a single case where that level of overlap has supported either

19   transfer or consolidation.

20        So in fact there's no connection between these

21   patents and Cendant's patents.  There's no connection between

22   the allegedly infringing activities in both cases.  One case,

23   they're performed by Cendant and its affiliates back East.

24   Another case, they're performed by Amazon here.  Unrelated

25   people, unrelated actions.

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1           So the first-to-file rule has nothing to do with this

2    case and, as the Ninth Circuit held in All Trade, if the issues

3    or the parties are dissimilar in the two courts, applying the

4    first-to-file rule is reversible error because it's a

5    misapplication of the law.

6           So, given that there's no first-to-file rule and

7    given that these cases have no relation that would allow them

8    to be consolidated in any court, we're left with the private

9    1404 A analysis, and all of those factors weigh heavily in

10   keeping the case here in Seattle.

11          The first one, as I mentioned, is what the Supreme

12   Court and Ninth Circuit said repeatedly, which is when a

13   plaintiff sues in his home court he is entitled to great

14   deference, and that should not be put aside lightly.

15          Secondly, this is furthest thing from forum shopping.

16   Forum shopping is defined as choosing a forum that has little

17   or no connection with the facts of the case.  In this case the

18   forum is Amazon's home base.  This is where their inventions

19   were developed.  It's where their inventors are, including,

20   importantly, five third-party inventors who are no longer

21   Amazon employees.  Those people cannot be compelled to testify

22   in Delaware.

23          In addition there are three prosecuting attorneys who

24   prosecuted the patents at issue in this case.  All of them were

25   in the Seattle area.  All of them are third parties.  All of

1   them cannot be compelled to testify in Delaware.  As the

2   Supreme Court noted, this is a key factor in this type of

3   analysis.  You choose the forum where live witnesses can

4   testify.

5          So again there's a total of eight identified, very

6   important, third party witnesses, including inventors, who have

7   to testify likely at a Markman hearing.  The convenience of

8   those nonparty witnesses, as the Ninth Circuit has repeatedly

9   said, is key.  Parties, particularly big corporations, can fly

10  across the country.  That is not an undue burden.  But where

11  you have unrelated third parties their convenience is

12  important.

13          THE COURT:  Won't that be the same for their expert

14  witnesses?

15          MR. HADDEN:  I'm sorry.  I didn't mean to interrupt

16  Your Honor.

17          THE COURT:  Go ahead.

18          MR. HADDEN:  I'm not talking about expert witnesses.

19  I'm talking about fact witnesses who are no longer affiliated

20  with any company.  Expert witnesses get paid for their travel

21  time.  That's not a burden.

22          THE COURT:  May that not be the same, though, for

23  their nonparty witnesses?

24          MR. HADDEN:  They haven't identified any nonparty

25  witnesses.  These are fundamental people to this case.  These

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

23

1    are inventors.  They have not identified anyone at all, much

2    less anyone who will be that crucial to the case, in their

3    papers.

4                 THE COURT:  Let me ask you a more basic question.

5                 MR. HADDEN:  Surely.

6                 THE COURT:  I guess I'm kind of struggling with a

7    little bit.  My understanding is that under 28 USC Section

8    1400 B, the special venue provision for patent suits, that

9    requires that an action for patent infringement be filed -- and

10   let me get the quote right -- in the judicial district where

11   the defendant resides or where the defendant has committed acts

12   of infringement and has a regular place -- regular and

13   established place of business.

14                Do Avis, budget, Orvitz [sic], et cetera have a

15   regularly-established place in business in Seattle, or are they

16   merely doing business in Seattle?

17                MR. HADDEN:  I believe, Your Honor, that that statute

18   has been construed so that venue and personal jurisdiction are

19   co-extensive in patent cases.  I don't have a cite for that,

20   but that, I am confident, is the law for the federal circuit,

21   Your Honor.  So if you are doing business sufficiently to

22   subject yourself to personal jurisdiction you fit within the

23   venue statute.

24                THE COURT:  Okay.

25                MR. HADDEN:  It's no doubt that Avis has a place of

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1  business, too.  I think I saw it this morning on my way in from
2  the airport.  So I don't think that is any hurdle, Your Honor.
3          So at the end of the day, putting aside the fact that
4  there is no first-to-file rule, there is no judicial economy
5  for transferring this case because it cannot be consolidated,
6  we're left with Amazon's legitimate choice of its home forum,
7  which should be given great deference, and we're left with the
8  Ninth Circuit's decision in Decker Coal, which we cited Your
9  Honor, that said that under 1404 A a court shouldn't just shift
10  in convenience from a plaintiff to the defendant.
11          And that's essentially what they're asking for here,
12  Your Honor.  You strip away all the smoke and mirrors, the only
13  argument they have is that they have more people in the
14  Northeast and somehow now Chicago's part of the Northeast, but
15  that's not sufficient as a matter of law, Your Honor.
16          And I can address the individual cases, if you'd
17  like, that Cendant cited.  In all of those cases the technology
18  involved in the two cases were the same parties' technology.
19  There's never a case like this where it's one side's patents in
20  one case and somebody else's patents in another case.  That's
21  just not true.
22          The Google case, for instance, the Court held that
23  the liability of these extra defendants were all flowing
24  directly from Google's liability so there would be no
25  additional issues with them.

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1      Mr. Olson's suggestion that there's the similar

2   theory between this case and the Delaware case, that's just not

3   true, Your Honor.  The theory in the Delaware case is that

4   Amazon is infringing Cendant's patents.  The theory here is

5   that this group of five companies is infringing four of

6   Amazon's patents.  There's no similarity in those theories.

7   There's no overlap.  That's not what happened in Google.

8      Similarly, Your Honor, the Mastercard case, it

9   involved the same parties' technology.

10      The Syngenta case that was mentioned, that was not

11   even a transfer.  It was just a consolidation of a patent in an

12   antitrust case.

13      So there's no case that they have cited that's

14   anywhere close to the facts of this case in which a court has

15   transferred under 1404 A or the first-to-file rule.

16      I can get you those cases on personal jurisdiction

17   and 1400 B, Your Honor.

18      THE COURT:  Thank you.

19      MR. HADDEN:  If there's nothing else, I'll sit down,

20   Your Honor.

21      THE COURT:  Let me ask you one other question.

22      MR. HADDEN:  Surely.

23      THE COURT:  In looking at 1404 A there really are two

24   major factors, and I understand the eight factors the Court

25   looks at under Decker Coal.  But the Court has to look at -- to

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1    determine whether or not the district in which defendants seek

2    to have the action transferred is one in which the action could

3    have been brought.

4              That's really not at issue here?

5              MR. HADDEN:  It's not an issue.

6              THE COURT:  We're looking at the second factor, and

7    that is that the transfer be for the convenience of the parties

8    and the witnesses and in the interest of justice.  And that's

9    maybe where some of the equities they're pointing to come in.

10             Let me ask you this question:  Having handled

11   hundreds of settlement conferences in civil cases myself, would

12   it make sense to have in this case maybe one magistrate judge

13   looking at all of these issues trying to reach a global

14   settlement?

15             MR. HADDEN:  I think if there was going to be a

16   global settlement that could be done.

17             Typically these cases settle through private

18   mediators.  Private mediator can look at the facts of the case

19   here in Delaware.  I don't believe that there's any basis for

20   transferring the case to try to facilitate a global settlement,

21   Your Honor.

22             THE COURT:  Thank you, Mr. Hadden.

23             Does someone wish to address the motion to dismiss?

24             MR. FANDEL:  Your Honor, Mike Fandel.

25             Just a point of clarification, if I could.  We had

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1    called earlier this morning to ask about time, and maybe we

2    miscommunicated, but we were under the impression that there

3    were 20 minutes for the transfer motion and 20 minutes for the

4    motion to dismiss.  It doesn't sound like that's what the Court

5    expects.  We kind of prepared based on another assumption.

6           How much -- I guess we want to know how much time we

7    have to argue the motion to dismiss.

8           THE COURT:  You're the only thing we've got this

9    afternoon, so I don't know.  You can take up to 20 minutes.

10   Not that you need 20 minutes.  You can take up to 20 minutes.

11          MR. FANDEL:  Thank you, Your Honor.

12          THE COURT:  Mr. Korniczky's going to argue.

13          MR. KORNICZKY:  Good afternoon, Your Honor.

14          Your Honor, our motion to dismiss is based on a

15   number of different theories.  Let me first address the Cendant

16   parent company.

17          Simply put, Cendant, the parent company, should be

18   dismissed because it is not a proper party here.  Cendant does

19   not operate the websites that have been alleged to infringe.

20   They didn't develop the websites.  They don't exert control.

21   All of this is established in the Bach declaration,

22   particularly in paragraphs 5 through 7.

23          In addition, you know, as also is -- is also set

24   forth in the Bach declaration, paragraphs 8 through 10, Cendant

25   strictly observes all corporate formalities.  There have been

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1    no facts pled here that suggest otherwise. There's no facts

2    here that justify piercing the corporate veil or any alter ego

3    agency theory of liability. So with respect to Cendant the

4    parent, I think there's no dispute that that entity should be

5    dismissed from this case.

6         With respect to all of the defendants, what's

7    happened here is Amazon has applied this sort of shotgun theory

8    of liability where they have asserted infringement of three

9    different theories of liability based on, I think, four

10   different patents against five different defendants. There's a

11   case that's right on point here, which is the Gen-Probe case.

12   Although there there were only two patents that were asserted,

13   and the court -- I'd like to read it. If I could read at

14   page -- it's the Gen-Probe case, 926 Federal Supplement 948 at

15   page 960.

16        And there, addressing the liability allegation, the

17   court states that they assert that liability in a confusingly

18   conclusory manner, accuses each of five defendants of three

19   very different causes of action on two different patents. Here

20   we have four different patents, all in one conclusive sentence

21   without adequately specifying the grounds for plaintiff's

22   belief that any of these entities had infringed.

23        And then it goes on and it says that the federal

24   rules do not require that the plaintiff plead with

25   particularity the specific patent claims that have been

1  infringed but the rules do require that defendant be given fair
2  notice of what the plaintiff's claims is and the grounds upon
3  which it rests.  The plaintiff's shotgun approach is clearly
4  deficient to serve either of these purposes.
5        That's exactly what's happening here.  In one
6  instance if they're relying on -- well, let me take a step
7  back.  Amazon's argument is we followed Form 16.  They
8  absolutely did not follow Form 16.  Form 16 sets forth an
9  approach where there's one patent asserted based on direct
10 infringement.
11       Here they're alleging direct infringement,
12 contributory infringement, and inducing infringement, and you
13 can't allege all three or any two of those allegations based
14 upon the same facts.  Here they don't tell you what facts
15 they're alleging.
16       So they didn't follow Form 16, which is directed
17 towards direct infringement.  They did follow the approach that
18 was criticized and in which the case was dismissed in the
19 Gen-Probe case.
20       THE COURT:  Well, let's cut through this.  Let's say
21 I agree with you.  Is the motion to dismiss really the proper
22 remedy?  Is a dismissal the proper remedy here?
23       MR. KORNICZKY:  The proper remedy would be to
24 transfer the case, but if that's not an option --
25       THE COURT:  Aside from that.  All right?

1          MR. KORNICZKY:  Really what has to happen here is

2    they have to give us fair notice of what they're alleging.

3          THE COURT:  Why can't they do that?

4          MR. KORNICZKY:  I don't think there's any reason they

5    shouldn't, unless they haven't established a case.  We think

6    what happened here is we filed our complaint, two days later

7    they filed theirs and didn't do their homework, so they're

8    expecting us to come back and do it.

9          Their position in the complaint was we can do this in

10   discovery.  But then what do we need the federal rules for,

11   because what you're going to do is you're going to have five

12   defenders and you're going to have one plaintiff and, running

13   around trying to figure out what's at issue, you're going to

14   drag the case out, you're going to run up the expenses for

15   everybody, when all you have to do is break out our allegations

16   and tell us what the basis is.  That hasn't been done here.  So

17   at a minimum what has to happen is that they have to provide us

18   with the basis for each one of those allegations.

19         Now, here what you have are five different websites.

20   Well, the website is our business, and if you turn to any one

21   of those what you'll see are there's a whole slew of different

22   services, different products.  I think if you look at the Bach

23   declaration, paragraph 15, with respect to one of the websites

24   it covers service center networks, emergency roadside

25   assistance, new car summaries.  They have a driver's discount,

1    opportunities to customers on dining or shopping. They have
2    discounts and rebates for women. They have pet privileges.
3    And it just goes on and on. They have educational services.
4            We as a defendant should not have to go forward and
5    try to figure out which one of these are they alleging
6    infringed. This would be akin to taking General Motors and
7    saying which car -- General Motors infringes our patents but
8    they don't tell us which car, and then they add in Chrysler and
9    Ford and we got to figure out four different patents with
10   different businesses and a hundred different cars. That's the
11   situation we have here.
12           THE COURT:  Thank you, counsel.
13           MR. KORNICZKY:  You're welcome, Your Honor.
14           THE COURT:  Mr. Hadden, they're making you work
15   today.
16           MR. HADDEN:  They are.  Hello again, Your Honor.
17           Let me start on the last point.  First, Amazon's
18   complaint meets the requirements of Rule 8 and the forum that
19   it has been approved.  For each defendant Amazon identified
20   what patent they infringed and how they did it by identifying
21   their website.
22           Now, there's no allegation that Cendant sells plane
23   tickets and rents cars and sells soap or whatever else they do.
24   We didn't identify any of those products.  That's a red
25   herring.  We're not accusing their cars.  We're not accusing

1    their tickets.

2         We're accusing their website. We specifically

3    identified the website by providing its URL. It's the

4    operation of the website, not what they sell over it, that's

5    infringing the patent. And we identified for every defendant

6    explicitly a website that was infringing and identified the

7    patents that were infringed. That's all the federal rules

8    require, and that's what we provided, in fact to be more

9    specific than the electric motor category that's specified in

10   the form.

11        Let me go to -- unless Your Honor has questions with

12   regard to the Cendant issue.

13        THE COURT: Go ahead.

14        MR. HADDEN: Okay. Amazon does not need to pierce

15   the corporate veil to sue Cendant for induced infringement.

16   Federal circuit said that in Manville. So what do we know? We

17   know from public information that Cendant both encourages and

18   aids its -- the infringement of its subsidiaries. It does that

19   by supporting and facilitating their websites. It's listed as

20   the administrator of all the websites except the Orbitz. And

21   it acknowledges doing joint marketing of these websites which

22   are infringing.

23        Now, as the federal circuit said in TiVo, inducement

24   is as broad as a range of actions by which one in fact causes

25   or urges to, encourages or aids another to infringe a patent.

33

1   Now, at this stage it can't be said that Amazon can prove no

2   set of facts under which Cendant's actions fit under that

3   general description.

4           In fact, from what we've seen from public

5   information, Cendant is directly infringing by hosting the web

6   servers that run the Avis and Budget sites.  They are operating

7   the computers that are performing the steps that are claims in

8   these patents.  Now, in that case Avis or Budget or

9   Trilegiant is likely inducing that infringement by providing

10  the infringing content and program, but Cendant itself is

11  likely to direct infringing.  And this motion from Gen-Probe

12  that you can't assert both indirect and direct infringement is

13  just wrong.

14          That has been rejected by scores of courts since

15  then.  And the reason is simply, Your Honor, as even Gen-Probe

16  says, you need not identify the specific claims within a patent

17  that you are asserting at the pleading stage.  And whether a

18  particular party is infringing directly or by inducement

19  depends on the particular claims.

20          For example, frequently you'll have patents, Your

21  Honor, that will have a product claim and then they will have a

22  method claim that covers the use of the product.  And if the

23  defendant is selling the product they are likely directly

24  infringing the product claim and inducing the infringement of

25  the method claim by selling a product that performs the method

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1    to their customers.

2         So, because you're not required to identify the

3    specific claims you're asserting when you file a complaint,

4    you're not also not required to identify whether or not the

5    claim is based on direct infringement or indirect infringement,

6    and Snap-on and scores of other cases since Gen-Probe have

7    agreed with that.

8         And there's actually a claim in this case where that

9    applies, so one of these patents is this associates patent.

10   It's '141.  And in that patent, as is frequently the case in

11   Internet patents, different entities' actions are claimed by

12   different claims.

13        So that involves a situation where you have a sort of

14   primary merchant who allows other people to link to their site

15   and they pay them commissions, and some of those claims cover

16   the people linked to the site and some of those claims cover

17   the person running the primary site.

18        Now, the defendants likely directly infringe the

19   claims that cover the primary site and they induce infringement

20   by their affiliates of these other claims.  So there's nothing

21   improper about that.  The cases that they cite that say that

22   you can't both infringe directly and indirectly are cases

23   involving venue disputes where someone tries to say that a sale

24   that is infringing that occurs in one district was induced by

25   some presale activity in another infringement -- in another

1  district -- I'm sorry, Your Honor -- and the courts say no,

2  that's one infringing act.  You can't slide it two different

3  ways to get around the venue statute.

4          But that's not what's going on in this complaint,

5  Your Honor.

6          THE COURT:  Thank you very much.

7          MR. HADDEN:  Thank you.

8          THE COURT:  Anything you want to say in response?

9          MR. KORNICZKY:  Well, maybe just one point just with

10  respect to what other cases are saying, Your Honor.

11          The complaints in virtually all the cases that are

12  identified in their brief provided a far more detailed

13  description of what the products or services were that

14  allegedly infringed.

15          In one of the cases that Amazon cites, the Oki case

16  they relied on, the court distinguished Gen-Probe.  In this

17  particular case they pointed out that the plaintiff had in fact

18  separated out each of those -- direct infringement, inducing

19  infringement, contributory infringement -- and what the court

20  recognized is that in each case the court is addressing

21  particular organizational deficiencies of the respective

22  pleadings.

23          So if you're dealing with one case which is only one

24  patent and the product at issue is pretty straightforward,

25  that's one thing.  Here you've got five different -- five

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

36

1    different defendants, you've got four different patents, and

2    then you've got easily in the hundreds of services; so that's

3    the distinction, Your Honor.

4                Thank you.

5                THE COURT:  Thank you.

6                Gentlemen, thank you very much.  Let me tell you what

7    my usual standard practice is, which I will follow in this

8    case.  It's to take your arguments back, review once again the

9    written motions as well as the specific case law that you

10   focused on here.

11               Obviously the Court will focus on the motion to

12   transfer first.  If the Court decides not to grant that motion,

13   then we'll focus on the motion to dismiss or ask them to

14   produce a more definite statement.  Hopefully -- we just got

15   done with about a two-and-a-half-week-long civil trial, just

16   got done on Friday.  I'm a little bit behind where I want to

17   be, especially with the holidays coming up, but the hope is to

18   be able to have a written order for you certainly by the end of

19   the month.  All right?

20               MR. KORNICZKY:  Thank you, Your Honor.

21               MR. HADDEN:  Thank you, Your Honor.

22               THE COURT:  We'll be at recess.

23          (At 2:40 p.m. proceedings were adjourned.)

24

25

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

37

--oOo--

1

2     I certify that the foregoing is a correct transcript

3     from the record of proceedings in the above-entitled matter.

4                    *Laurene Kelly*

5                    Laurene Kelly

6              This 19th day of JANUARY, 2006.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

# EXHIBIT D

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  AMAZON.COM and A.9.COM, INC.,

11          Plaintiffs,                           CASE NO. C05-1137RSM

12          v.                                    ORDER ON DEFENDANTS' MOTION
                                                  TO TRANSFER
13  CENDANT CORPORATION; TRILEGIANT
    CORPORATION; ORBITZ, LLC; BUDGET
14  RENT A CAR SYSTEM, INC., and AVIS RENT
    A CAR SYSTEM, INC.,
15
            Defendants.
16

17          This matter is before the Court for consideration of a motion by all defendants to transfer this

18  case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of Delaware.

19  Defendants have also concurrently filed a motion to dismiss pursuant to F.R.Civ. Proc. 12(b)(6), but have

20  asked that the motion to transfer be considered first.  Oral argument was heard on November 21, 2005,

21  and the parties' memoranda and exhibits have been fully considered.  For the reasons which follow, the

22  Court shall GRANT the motion to transfer, and DENY the motion to dismiss, without prejudice to

23  renewal in the Delaware court.

24                                      BACKGROUND

25          This is a patent infringement case, involving four software patents held by plaintiffs Amazon.com

26  ("Amazon") and A9.com (the assignee of one of the four patents at issue here).   They name as

27  defendants Cendant Corporation ("Cendant") and its subsidiaries Trilegiant, Orbitz, Budget Rent-a-Car

28

ORDER ON MOTION TO TRANSFER - 1

1   ("Budget"), and Avis Rent-a-Car Systems ("Avis"). All patent infringement allegedly occurred on

2   defendants' websites. All parties (plaintiffs and defendants) are incorporated in Delaware.       This

3   is not the first time these parties, or their subsidiaries, have met in court. In October 2004, Cendant

4   Publishing, Inc., another subsidiary of Cendant, filed suit against Amazon for infringement of a different

5   patent, the "370' patent, in district court in Delaware. The parties agreed to try to settle their dispute,

6   and Cendant Publishing dismissed the case. Upon failure of the settlement negotiations, Cendant

7   Publishing re-filed the case in Delaware on June 18, 2005. Two days later, Amazon filed this suit here.

8   At the time, Amazon made public statements describing this lawsuit as "purely a defensive measure."

9   *See*, Declaration of James Fazio, Exhibit C.   According to Amazon spokesperson Patty Smith, "This suit

10  was filed in direct response to Cendant's refiling of their patent infringement suit. This is the first time

11  that we have asserted any of these four patents, and we would not have asserted them if Cendant had not

12  filed against us. It's purely a defensive measure." *Id.*

13      The patents at issue in this case are: (1) the '339' patent, which is directed to secure methods for

14  transmitting credit card authorizations over a non-secure network; (2) the '141' patent, which enables

15  customers to post recommendations of products or services on the Internet; (3) the '079' patent, which

16  provides customers with a selection of shopping baskets from which they can choose a particular shipping

17  method, delivery, or payment option; and (4) the '609' patent, which discloses use of a "browse graph"

18  that helps on-line shoppers to navigate the internet to reach goods and services in which they might be

19  interested.   The patent at issue in the Delaware case is the '370' patent,  which discloses a method of

20  making recommendations of goods and services to potential customers based on buying history of other

21  customers.

22      Defendants have moved to transfer this action to the Delaware court pursuant to 28 U.S.C. §

23  1404(a),  which states that "[f]or the convenience of parties and witnesses, in the interest of justice a

24  district court may transfer any civil action to any other district or division where it might have been

25  brought."   The purpose of this section is to "prevent the waste 'of time, energy, and money' and 'to

26  protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Van Dusen*

27  *v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. The Barge FBL-585*, 364 U.S.

28

ORDER ON MOTION TO TRANSFER - 2

19, 26-27 (1960). The statute "displaces the common law doctrine of *forum non conveniens*" with respect to transfers between federal courts. See *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F. 2d 834, 843 (9th Cir. 1986). Section 1404(a) is not, however, simply a codification of the common law doctrine. In passing § 1404(a), Congress "intended to permit courts to grant transfers upon a lesser showing of inconvenience" than was needed for dismissal under the doctrine of *forum non conveniens.* *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955).

The statute has two requirements on its face: (1) that the district to which defendants seek to have the action transferred is one in which the action "might have been brought," and (2) that the transfer be for the convenience of parties and witnesses, and in the interest of justice. § 1404(a). There is no question here that the action could have been brought in Delaware district court. Venue for a patent infringement case is restricted: the case must be brought where the defendant resides or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). All parties, both plaintiffs and defendants, are incorporated in Delaware and subject to personal jurisdiction there. The Delaware court also indisputably has subject matter jurisdiction over a patent infringement complaint. The decision to transfer, then, turns on whether the Court finds such transfer to be proper under the "convenience of parties and witnesses" and "interest of justice" standards. The burden is on defendants to demonstrate that the transfer is warranted. *Saleh, et al., v. Titan Corporation, et al.*, 361 F. Supp. 2d 1152, 1155 (C.D.Cal. 2005).

The parties have both argued their positions using the eight-factor test from *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F. 2d 834 (9th Cir. 1986). Defendants list these as (1) the convenience of the parties and the witnesses; (2) the location where the alleged events in the lawsuit took place; (3) the relative ease of access to sources of proof; (4) the plaintiff's choice of forum; (5) the pendency of related litigation in the transferee forum; (6) the relative congestion of the two courts; (7) the public interest in the local adjudication of local controversies; and (8) the relative familiarity of the two courts with the applicable law. *Id.* at 843. These factors were adapted from the traditional *forum non conveniens* analysis of public and private interest factors. *Id.*; *Saleh,* 361 F. Supp. 2d at 1155. Because these factors cannot be mechanically applied to all types of cases, they shall be considered here under the

ORDER ON MOTION TO TRANSFER - 3

1  statutory requirements of convenience of witnesses, convenience of parties, and the interests of justice.

2  **1. Convenience of the parties.**

3  Amazon asserts that the plaintiff's choice of forum should be given great weight, and has cited a

4  great many cases to that effect.  However, as noted by one California court, "[t]he courts have developed

5  a bewildering variety of formulations on how much weight is to be given to plaintiff's choice of forum."

6  *Saleh*, 361 F. Supp. 2d at 1156 (quoting 15 Wright, Miller and Cooper, *Federal Practice and Procedure*

7  § 3848 at 375.)   Because § 1404 application results in transfer, not dismissal as in *forum non conveniens*,

8  a lesser showing of inconvenience is required to upset plaintiff's choice.  *Id.*; citing *Norwood*, 349 U.S. at

9  42.

10  Where the action has little connection with the chosen forum, less deference is accorded plaintiff's

11  choice, even if plaintiff is a resident of the forum.  *Id.*, citing *Cain v. New York State Board of Elections*,

12  630 F. Supp. 221, 227 (E.D.N.Y. 1986).  *See also Chrysler Capital Corp. v. Woehling*, 663 F. Supp.

13  478 (D.Del. 1987); *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991).  In patent

14  infringement actions, the preferred forum is "that which is the center of gravity of the accused activity."

15  *Ricoh Co., Ltd., v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n. 17 (D.N.J. 1993); *quoting S.C. Johnson &*

16  *Sons, Inc., v. Gillette Co.*, 571 F. Supp. 1185, 1188 (N.D. Ill. 1983).   The district court "ought to be as

17  close as possible to the milieu of the infringing device and the hub of activity centered around its

18  production."  *Id.*  Here, the alleged infringement occurred on defendants' websites, which were designed

19  and are maintained at defendants' business headquarters in New York (Cendant), New Jersey (Avis and

20  Budget), Connecticut (Trilegiant), and Chicago, Illinois (Orbitz).  Although none of the defendants

21  actually has its headquarters in Delaware, their chosen forum state, they provided at oral argument a

22  convincing demonstration of the proximity of the New York and New Jersey offices to the Delaware

23  court.  Thus the center of gravity in this case, based on the "hub of activity" around the infringing

24  websites, lies far to the east of Seattle, and weighs in favor of the Delaware forum.

25  As to the relative convenience to the parties,  the Court may not transfer a case simply to shift the

26  burden from one party to another.  *Decker Coal*, 805 F. 2d at 843.  However, the Court may look at the

27  sheer weight of the numbers—two plaintiffs versus five defendants, in considering convenience.  *Selah*,

28

ORDER ON MOTION TO TRANSFER - 4

1   361 F. Supp. 2d at 1162 (quoting *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1120 (C.D.Cal.

2   1998). This factor thus favors transfer.

3       **2. Convenience of the witnesses.**

4       When considering the convenience to witnesses, "the convenience of non-party witnesses is the

5   more important factor." *Saleh*, 361 F. Supp. 2d at 1160 (quoting *Aquatic Amusement Associates, Ltd. v.*

6   *Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990)). The Court should consider not only

7   how many witnesses each side may have, but also the relative importance of their testimony. *Id.*, citing

8   *Gates Learjet Corp. v. Jensen*, 743 F. 2d 1325, 1335-36 (9th Cir. 1984) (a *forum non conveniens* case).

9   Plaintiff has named four party witnesses and four non-party witnesses, patent inventors who are no longer

10  employed at Amazon. All are located in Seattle. Defendants have named eight party witnesses, who are

11  located in New Jersey (Avis and Budget), Chicago (Orbitz), and Connecticut (Trilegiant). While

12  defendants have not named any non-party witnesses, this is understandable due to the early stage of these

13  proceedings. As to the non-party witnesses, defendants have not demonstrated any benefit from transfer

14  of the case. However, this case will necessarily involve expert witnesses, who will have to appear for a

15  <u>Markman</u> hearing as well as for trial. Plaintiffs may well have the same expert witnesses for this case as

16  for the case already in Delaware. If so, that factor would strongly favor litigation of this matter in

17  Delaware.

18      **3. Interest of Justice.**

19      The interest of justice factor is the most important of all. *Nelson v. Master Lease Corporation*,

20  759 F. Supp. 1397, 1402 (D.Minn. 1991); *citing Medtronic, Inc., v. Americal Optical Corporation*, 337

21  F. Supp. 490, 495-97 (D.Minn. 1971). "Consideration of the interest of justice, which includes judicial

22  economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and

23  witnesses might call for a different result.'" *Regents of the University of California v. Eli Lilly and*

24  *Company*, 119 F. 3d 1559, 1565 (D.C.Cir. 1997). In considering the interests of justice, the Court

25  weighs such factors as "ensuring speedy trials, trying related litigation together, and having a judge who

26  is familiar with the applicable law try the case." *Heller Financial, Inc., v. Midwhey Powder Co.*, 883 F.

27  2d 1286, 1293 (9th Cir. 1989). Overall, these factors favor the Delaware forum.

28

ORDER ON MOTION TO TRANSFER - 5

1    First of all, there is a related case in Delaware.  "The pendency of related actions in the transferee

2  forum is a significant factor in considering the interest of justice factor."  *Jolly v. Purdue Pharma L.P.,*

3  2005 WL 2439197 at *2 (S.D. Cal.) (*citing A.J. Industries, Inc., v. United States District Court for the*

4  *Central District of California,* 503 F. 2d 384, 389 (9th Cir. 1974); *Continental Grain v. The Barge FBL-*

5  *585,* 364 U.S. at 26.  "Litigation of related claims in the same tribunal is strongly favored because it

6  facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid[s]

7  duplicitous [sic] litigation and inconsistent results."  *Durham Products, Inc., v. Sterling Film Portfolio,*

8  *Ltd., Series A,* 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982).  Plaintiffs assert that this case is not similar to

9  the Delaware case because the two cases involve "different patents, different witnesses, different

10  document, different technologies, and different issues."  Plaintiff's Opposition, p. 14.  However, the cases

11  both concern software patents which relate to internet commerce, and are similar enough that they should

12  be considered by the same court in order to conserve judicial resources and prevent inconsistent rulings.

13  Moreover, it is inconsistent for plaintiffs to argue that the cases are not similar when it was Amazon who

14  filed a "notice of related action" in the Delaware case.  Amazon stated in that notice that the two cases

15  involve "substantially the same parties."

16    The congestion of the court's docket is another factor to be considered under this heading.

17  Defendants have offered evidence from the federal court's website indicating that the District of

18  Delaware has a lower per-judge civil caseload (441 cases) than this district (655 cases).  Plaintiff, on the

19  other hand, has countered with statistics on the median time to trial in the two districts:  16.4 months in

20  this district versus 26 months in Delaware.  Generally, the courts find this to be the more important

21  statistic.  "The real issue is not whether a dismissal will reduce a court's congestion but whether a trial

22  may be speedier in another court because of its less crowded docket."  *Gates Learjet Corp.*, 743 F. 2d at

23  1337.  Here, however, the statistic as to the "speedier trial" offered in Washington is illusory.  This

24  Court's docket is not "less crowded"; it is more.  The statistics on median time to trial do not separate

25  types of trials and thus do not account for the great complexity of patent cases, which take considerably

26  longer to come to trial.  In this Court, a patent case would not be scheduled for trial 16.4 months after

27  filing; in the Court's experience it takes that long simply to arrive at the <u>Markman</u> hearing.  Thus it

28

ORDER ON MOTION TO TRANSFER - 6

1  cannot be said that a speedier trial could be had here than in Delaware.

2  It is the judicial economy factor which weighs most heavily in favor of the Delaware forum.  "In a

3  case such as this in which several highly technical factual issues are presented and the other relevant

4  factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become

5  familiar with the issues." *Regents of the University of California*, 119 F. 3d at 1565.  Having handled

6  the related case, the Delaware court will be already familiar with the complex technological issues  and

7  the applicable law.

8  Transfer will also promote judicial economy in that it will facilitate consolidation and settlement.

9  While consolidation of the two cases is a matter for the Delaware court to decide, the feasibility of such

10  consolidation is a factor that this Court may consider in deciding whether to allow a transfer. *University*

11  *of California v. Eli Lilly & Co.*, 21 U.S.P.Q. 1201, 1207 (N.D.Cal. 1991).  Even if they are not

12  consolidated, transfer of this case will allow a global settlement of the related cases.

13  Finally, litigation in Delaware would satisfy the "local interest" factor.  Delaware has a strong

14  interest in litigation between the companies in this suit, all of which are incorporated there. *Hi-Pac, Ltd.*

15  *v. Avoset Corporation*, 980 F. Supp. 1134, 1141 (D.Haw. 1997).

16  As the Court has determined to grant the motion to transfer pursuant to § 1404, there is no need

17  to address the alternative arguments under the "first to file" rule.

18                                          CONCLUSION

19  Accordingly, defendants' § 1404(a) motion to transfer is GRANTED, and this case is

20  TRANSFERRED to the United States District Court for the District of Delaware.  The Clerk shall close

21  the file and notify the Clerk of Court in that district.  Defendants' pending motion to dismiss is DENIED

22  without prejudice to renewal in the Delaware court.

23

24  Dated this 13 day of December 2005.

25

26

27                                          RICARDO S. MARTINEZ
                                            UNITED STATES DISTRICT JUDGE
28

ORDER ON MOTION TO TRANSFER - 7

# EXHIBIT E

 ROTHWELL, FIGG, ERNST & MANBECK, P.C.

1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

Telephone 202-783-6040
Facsimile 202-783-6031
www.rfem.com

| | |
|---|---|
| G. Franklin Rothwell | Anne M. Sterba |
| E. Anthony Figg | Lisa N. Phillips |
| Barbara G. Ernst | Leigh Z. Callander |
| Harry F. Manbeck, Jr. | C. Nichole Gifford |
| George R. Repper | Patrick T. Skacel |
| Steven Lieberman | Monica C. Kitts |
| Joseph A. Hynds | Brian A. Tollefson |
| Elizabeth A. Leff | Joo Mee Kim* |
| Richard Wydeven | Steven M. Giovannetti |
| Martin M. Zoltick | Hyunkweon Ryu |
| Minaksi Bhatt | R. Elizabeth Brenner |
| Sharon L. Davis | Adam M. Treiber |
| Robert B. Murray | Daniel L. Shores |
| Carla C. Calcagno | Joseph E. Green |
| Jeffrey L. Ihnen | |
| Glenn E. Karta | Of Counsel |
| Martha Cassidy, Ph.D. | John A. McCahill |
| Brian S. Rosenbloom | Barbara Webb Walker, Ph.D. |

*Not Admitted in D.C.

January 24, 2006

*Via E-Mail*

Wendy L. Bjerknes, Esq.
Fenwick & West LLP
Silicon Valley Center
801 California St.
Mountain View, California  94041

    Re: *CD Intellectual Property Holdings LLC v. Amazon.com, Inc.*
       <u>Our File No.: 3339-101</u>

Dear Wendy:

    Attached is a redlined version of the draft Stipulated Protective Order.  As you can see, this draft incorporates many of the changes/additions you proposed, including additional source code protections.  Please let me know if Amazon will agree to the terms of this draft.

    In response to your request for the positions of the three attorneys listed in paragraph 12.c of the draft Stipulated Protective Order, Andrew Hollander is Senior Counsel, Cendant Corporation, Scott McLester is Senior Vice President - Legal Cendant Corporation and Curt Stevens is Senior Vice President Legal Department, IT and IP Group Cendant Corporation. Please provide me with the positions of the individuals listed in paragraph 12.d of the draft Stipulated Protective Order.

    I look forward to your prompt response.

             Very truly yours,

             Elizabeth A. Leff

EAL:whc
enc.
cc: Steven Balick, Esq.

Bjerknes.L17.wpd