# EXHIBIT M

**FENWICK & WEST LLP**
SILICON VALLEY CENTER

801 CALIFORNIA STREET ~ MOUNTAIN VIEW, CA 94041

TEL 650.988.8500 I FAX 650.938.5200 ~ WWW.FEN1WICK.COM

March 14, 2006

WENDY BJERKNES

EMAIL WBJERKNES@FENWICK.COM
DIRECT DIAL (650) 335-7647

**VIA** E-MAIL

Elizabeth Leff, Esq.
C. Nichole Gifford, Esq.
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W., Suite 800
Washington, D.C. 20005

Re: *CD Intellectual Property Holdings, LLC v. Amazon.qom, Inc.*

Dear Counsel:

This letter responds to your March 13, 2006 letter regarding CD's Interrogatory and Document Responses.

Regarding CD's response to Interrogatory No. 1, you indicate that CD will provide "its preliminary contentions of infringement with respect to the 'Customers Who Bought This Item Also Bought" feature." Yet you fail to indicate what information you will provide or when. In order to determine whether a motion to compel is necessary, please provide your supplemental response. We intend to discuss at the meet and confer tomorrow a deadline for this – if CD refuses to agree to a deadline, Amazon.com will move to compel As you note, we have discussed this issue repeatedly. Amazon.com's Interrogatory Requests were served more than three months ago. That CD is only now acknowledging its obligation to provide this information does not provide CD more opportunity for delay.

You indicate that you need not provide any other contentions you may have regarding other features, or even identify other features you may accuse of Infringement. I agree that we have fully discussed this issue, and Amazon.com will move to compel on this issue, or alternatively will seek an order preventing CD from making any contentions about them, given that written discovery is at an end.

With respect to CD's response to Interrogatory No. 3, you indicate that CD will " supplement its response...to the best of its ability." In order to determine whether a motion to compel is necessary, please provide your supplemental response. We intend to discuss at the meet and confer tomorrow a deadline for this – if CD refuses to agree to a deadline, Amazon.com will move to compel. For all the reasons previously discussed, CD's obligation to fully provide information regarding conception, reduction to practice, and diligence in reducing to practice have absolutely nothing to do with Amazon.com or discovery produced by Amazon.com and is otherwise required by both the Interrogatory and case law. As you note, we have discussed this issue repeatedly for over a month – that CD is only now acknowledging its obligation to provide

Elizabeth Leff, Esq.
C. Nicole Gifford, Esq.
March 14, 2006
Page 2

With respect to Interrogatory No. 5, I have explained why information regarding embodiments of the purported invention(s) is relevant to this lawsuit. The requested information is relevant to several disputed issues in this case, including the scope of the patent in suit, when the claimed invention(s) was/were conceived, reduced to practice, licensed, sold, and offered for sale (if ever), all of which are relevant to claims or defenses in the litigation. The requested information also is directly relevant to the existence and extent of any claimed damages. *See* 7-20 CHISUM ON PATENTS § 20.03. I cited multiple cases regarding the relevance of this information in my March 8, 2006 letter. Moreover, as plaintiff, you must substantiate your positions on these issues by identifying where in each embodiment each claim element can be found. Since your position is that you need not supplement your response, Amazon.com will move to compel.

Regarding CD's Document Responses, in my March 8, 2006 letter, I identified **20** separate document requests for which CD provided no indication that it would produce responsive documents. You have now agreed to supplement some of these requests, but you fail to indicate when and how you will supplement your responses. We intend to discuss at the meet and confer tomorrow a deadline for this — if CD refuses to agree to a deadline, Amazon.com will move to compel.

Moreover, you still assert that you still do not understand some of the requests (though you fail to indicate which ones), and you otherwise fail to indicate that you will produce any responsive documents to the others. To the extent that CD did not understand any of these requests, I asked in my March 8, 2006 letter that you identify the source of your confusion in a meet and confer, as I am happy to address any questions that you may have about these requests. Rather than ask those questions, you simply assert that CD will "supplement its response" to 14 of those Document Requests based on the "few clarifications" I provided in my letter. I again ask that you identify what you do not understand in each request. Since you continue to assert that you do not understand these requests, we will go through and discuss each of them at the meet and confer.

Regarding Document Request No. 15, you still fail to indicate that you produce *any* responsive documents. This is unacceptable. The request asks N. documents related to any "use" of the inventions claimed in the patent-in-suit. "Use" of a patented method or device is not only the standard basis of infringement, documents related to any purported "use" of the invention relate to damages issues, validity issues, and unenforceability issues. There is no basis for your refusal to produce these highly relevant documents. Your statement that uses by non-parties is irrelevant to the issues in this case is simply incorrect – it directly impacts on Plaintiff's claims for damages and scope of coverage of the patent-in-suit. CD's position on this issue is not justifiable, and Amazon.com will move to compel CD's production of such documents.

With respect to document requests specifically related to "embodiments" of the patent-in-suit (in particular requests 13, 33, 36 and 38), I have repeatedly explained why such documents are relevant to this lawsuit, including the reasons identified in th=s letter. That it is improper to analyze and compare the Plaintiffs commercial embodiment to the defendant's product to determine whether the defendant's product infringes, of course does not mean that all purported embodiments of the invention(s) claimed in the patent-in-suit (both before and after the patent-

Elizabeth Leff, Esq.
C. Nicole Gifford, Esq.
March 14, 2006
Page 3

in-suit issued) are not relevant to other aspects of this case. CD's position on this issue is not justifiable, and Amazon.com will move to compel CD's product on of such documents.

CD's limitation that it will produce only the published "continuation application" to respond to requests regarding "related patents/applications" is unacceptable. Documents regarding the application, drafts of documents submitted in the prosecution of the application, and discussing the application itself are relevant to this case, in particular to issues regarding claim construction, prosecution history estoppel, as well as conception, reduction to practice, and diligence issues. Please indicate that you will produce these documents, or Amazon.com will move to compel them.

With respect to Document Request Nos. 28 and 35, whic.i you argue are duplicative of Document Requests Nos. 27 and 2 respectively, since we do not knew how you are interpreting the scope of these requests, we cannot affirm that they are duplicative or not. We believe they are not duplicative. For instance, Document Request 35 seeks all documents maintained in a file by or for CD (as defined in the requests) relating to the '370 Patent or any related patents/applications. Therefore, if there are documents placed in such a file do not fall within the scope of Request No. 2, we still are entitled and seek those documents. Document Request 28 calls for documents before the patent-in-suit or related patents issued, namely documents created during the process of preparing to and prosecuting the patents. Document Request 27 is directed to documents regarding '370 Patent itself, including any summaries or descriptions, the scope of any claim, etc. as put forth in the remainder of the request. Pleae produce all such documents. If you fail to indicate that you will do so, Amazon.com will move to compel these documents.

Regarding your comments about Amazon.com's position on the relevant time frames involved in this lawsuit, I put forward this position in my March 8, 2006 letter to you and in other correspondence, as well as explained it in our meet and confer. Your cut and paste of your *incorrect* summary of Amazon.com's position from your March 2, 2006 letter into your most recent letter is not helpful. In my March 8, 2006 letter, I explained Amazon.com's position, which also referenced previous correspondence. In that correspondence, I have repeatedly invited you to identify any additional categories of documents or information that are relevant prior to the issuance of the patent-in-suit other than those put forward by Amazon.com (your letter does not accurately summarize Amazon.com's position on what those categories are). Your only response to that was to discuss how documents relate to Books.com may be relevant prior to the patent-in-suit issuing, but I already agreed that Amaon.com would produce documents and information that concern the patent-in-suit, even if they are date prior to the issuance of the patent-in-suit, including documents related to Charles Stack, Books.com, and Book Stacks Unlimited. As I explained in my March 8, 2006 letter, this follows directly your statements regarding the scope of relevance for such documents put forth in CD's Document Responses. *See e.g.,* CD's Responses to Document Requests Nos. 29 and 63. These are documents most likely in CD's hands – how CD can assert that it need not produce such
documents but Amazon.com must is untenable.

In any event, you never explained the relevance of docun ents mentioning Books.com in any meet and confer. And even now in your March 13, 2006 left    while you propose that a hypothetical document might say "something along the lines of `the books.com website has a great recommendation feature called Affinity that is really novel  and we should copy i t,' you

Elizabeth Leff, Esq.
C. Nicole Gifford, Esq.
March 14, 2006
Page 4

still do not explain why such a document would be relevant. Ac ;ording to your position throughout the remainder of your letter, anything related to the Affinity embodiment (or any embodiment for that matter) is **not** relevant to this lawsuit. In fact, the one case you cite stands for the proposition that comparison of the accused product to an embodiment of the patent is not relevant to an infringement analysis. So again, please explain hcw even your hypothetical document is relevant. Moreover, until you establish that the Affinity feature was even an embodiment or the inventor's reduction to practice of a claim of the patent-in-suit, how can you even assert that documents Amazon.com may have regarding it are relevant to this patent infringement lawsuit.

I look forward to discussing these issues at the meet and :onfer tomorrow.

Sincerely,

Wendy Bjerknes

cc:     Steven Balick

23944 CHISLIP125J9%

# EXHIBIT N



**F E N W I C K & W E S T LLP**

**SILICON VALLEY CENTER**

801 **CALIFORNIA** STREET I MOUNTAIN VIEW, CA 94041

TEL 650.988.8500 I **FAX** 650.938.5200 I WWW.FENWICK.COM

March 16, 2006

EMAIL PPREMO@FENWICK.COM
DIRECT DIAL 650.335.7963

PATRICK E. PREMO

VIA EMAIL & U.S. MAIL

Elizabeth Leff, Esq.
C. Nichole Gifford, Esq.
Rothwell, Figg, Ernst & Manbeck, P.C.
M25 K Street, N.W., Suite 800
Washington, D.C. 20005
   Re: *CD Intellectual Property Holdings, LLC v. Amazon. corn, Inc.*

Dear Counsel:

   This letter is to follow up on our client's further attempts to address the outstanding issues surrounding Plaintiff's deficient discovery responses as well as our related efforts to obtain compliance to subpoenas directed to the inventors (Charles Stack and Adam Wallace) and prosecuting attorneys (Vincent DeLuca and Rothwell, Figg, Ernst & Manbeck, P.C.).

   As you know, our client's objections have been well documented by the many letters (two or more of which were sent on some days) by my colleague, Wendy Bjerknes, and myself. *See W*. Bjerknes Ltrs. dated February 8, 9, 10, 14, 21, 24, 27, 28, and March 8, 10 and 14, 2006, and P. Premo Ltr. dated March 14, 2006. Yesterday, we engaged in another lengthy meet-andconfer call lasting three hours in a final attempt to resolve the issues. During our call, you informed us for the first time that you would not provide supplemental responses or the documents requested before Friday, March 24, 2006, which is well after when this discovery should have been provided and two days after the extended deadline for document production. You refused to consider an earlier deadline and invited us to bring a motion to compel if this was not acceptable to us.

   Beyond the fact that your efforts to unilaterally extend dates for providing this basic discovery is improper, we voiced our concern yesterday that even if we did wait another week and a half, we may receive the same kind of evasive, non-responsive answers found in the original responses. Our concern is that your clients are simply further delaying their compliance with discovery. Yesterday, you stated that that this was not your intention and that if this were the case, we would be permitted to immediately move to compel on any supplemental responses without having to engage in further meet-and-confer efforts. You also agreed to permit us to have up to and including March 24 to complete our document production, which was currently reset to March 22. Based on these conditions as well as your assurances that your clients' supplemental responses would fully address our objections, I agreed today not to raise a timeliness objection to your March 24 deadline. However, please bear in mind that this should

Elizabeth A. Leff, Esq.
C. Nichole Gifford, Esq.
March 16, 2006
Page 2

not be considered or treated as an extension of time with respect to any other discovery. If there is any confusion on this point, please let me know immediately in writing. Moreover, if your letter is anything less than a statement of full compliance on the issues for which we agreed, we intend to proceed with a motion to compel.

Yesterday, we also struggled to get you to confirm with some degree of specificity what you would be providing on March 24. We attempted to do this during our call, but at various times, you challenged our statement and argued that we had not accurately articulated what you had agreed to provide (without explaining how we had incorrectly recited your agreement). To ensure there is no confusion, we asked that you confirm your agreement to supplement and produce in writing. We originally asked for a letter following our call on Wednesday, you refused to provide a confirming letter any earlier than Friday morning (Pacific Time), March 17, 2006.

We genuinely hope that the parties have resolved many of the issues and narrowed others. Your letter tomorrow will go a long way in determining whether the parties have in fact resolved many of these issues. If for any reason your letter does not confirm the offers extended by you during our call or fails to fully address the legitimate objections we have made to the responses received to date, we will have no choice but to move ahead with a motion to compel.

I look forward to reviewing your letter tomorrow morning.

Very truly yours,

k L 1  mo PEP

1246583

# EXHIBIT O



ROTHWELL, FIGG, ERNST & MANBECK, p.c.

1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

Telephone    202-783-6040
Facsimile 202-783-6031 www.
rfem.com

G. Franklin Rothwell        Anne M. Sterba Lisa
E. Anthony Figg             N. Phillips Leigh Z.
**Barbara** G. Ernst         Callander        C.
Harry F. Manbeck, Jr.        Nichole    Gifford
George R. Repper             Patrick  T.  Skacel
Steven Lieberman            Monica  C.  Kitts
Joseph A. Hynds             Brian  A.  Tollefson
Elizabeth A. Leff            Joo Mee Kim°
Richard Wydeven             Steven M. Giovannetti
Martin M. Zoltick           Hyunkweon Ryu R.
Minaksi Bhatt               Elizabeth Brenner
Sharon L. Davis             Adam M. Treiber
Robert B. Murray            Daniel L. Shores Joseph
Carla C. Calcagno           E. Green
Jeffrey L. Ihnen Glenn
E. Karta Martha
Cassidy, Ph.D. Brian S.      Of Counsel
Rosenbloom                  John A. McCahill
                            Barbara Webb Walker, Ph.D.

*Not Admitted in D.C.

March 17, 2006

*Via E-Mail*

Patrick E. Premo, Esq.
Fenwick & West LLP
Silicon Valley Center
801 California St.
Mountain View, California 94041

> Re:  *CD Intellectual Property Holdings LLC v. Amazon.com, Inc.*
> Our File No.: 3339-101

Dear Patrick:

This letter will confirm the agreements that were reached between the parties at the meet and confer conference on Wednesday, March 15th with respect to CD.

CD will supplement its response to Interrogatory No. 1 to include an infringement chart comparing the asserted claims of the `370 patent with Amazon's "Customers Who Bought Also Bought" feature. CD reserves the right to further supplement this response after the Court has ruled on CD's pending motion to compel Amazon to respond to CD's Interrogatory No. 1 and pending CD's review of documents which Amazon has just begun to produce.

CD will supplement its response to Interrogatory No. 3 to include additional factual information on conception, reduction to practice and diligence. CD reserves the right to further supplement this response, if and when Amazon identifies a specific piece of prior art or a prior invention sufficient to establish the critical period for diligence in reduction to practice.

CD will supplement its response to Interrogatory No. 5 to include a chart comparing the claims of the `370 patent with the Affinity feature described in the `370 patent. CD will also indicate in its response if there are any other embodiments of the `370 patent that were implemented by CD (as that term is defined in the Interrogatories).

CD will provide supplemental responses to Document Request Nos. 13, 14, 17, 23, 24, 25, 27, 29, 30, 32, 33, 36, 37, 38, 43, 44 and 60 to clarify CD's agreement to produce documents.

ROTHWELL, FIGG, ERNST & MANBECK,

Patrick E. Premo, Esq.
March 17, 2006 Page 2

With respect to Document Request Nos. 28 and 35, CD confirms that no documents were withheld on the basis that these requests are duplicative.

    With respect to those requests that seek information related to "use" or "embodiments" of the invention, where requested, CD will produce documents relating to such "use" or "embodiments" of the invention for the parties to the litigation and CD's licensees, if any exist. Additionally, during the meet and confer, we indicated that CD would not agree to produce documents related to "use" or "embodiments" of the invention for unrelated third parties. However, upon further consideration, and in an effort to resolve any potential disputes, CD will agree to produce documents relating to the "use" or "embodiments" by third parities to the extent such documents are not privileged and are within CD's possession, custody or control.

    We confirm that CD is not withholding documents in counsel's possession based on their objection that such documents are not in CD's possession, custody or control.

    With respect to requests that seek information regarding "related patent/applications," CD clarifies its position as follows: CD will agree to produce relevant, non-privileged documents related to the prosecution of the patent-in-suit and the pending continuation application. CD, will include privileged documents in these categories on a privilege log.

    As to timing, the supplemental responses for CD will be sent to Amazon's counsel via e-mail on Friday, March 24th, and any documents being produced by CD will be sent out on March 24`h via Federal Express.

Very truly yours,

, 1 j.

C. Nichole Gifford

CNG:erh

cc:    Steven Balick, Esq.

Premo. L 02

EXHIBIT P

LEXSEE 2005 US DIST LEXIS 13807

**IMAX CORPORATION and THREE-DIMENSIONAL MEDIA GROUP, LTD.,
Plaintiffs and Counterclaim Defendants, v. IN-THREE, INC., Defendant and Coun-
terclaimant.**

Case No. CV 05-1795-FMC (Mcx)

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA, WESTERN DIVISION**

*2005 U.S. Dist. LEXIS 13807*

**July 8, 2005, Decided July 8, 2005, Filed**

**SUBSEQUENT HISTORY:** Motion denied by *IMAX Corp. v. In-Three, Inc., 385 F. Supp. 2d 1026, 2005 U.S. Dist. LEXIS 24197 (C.D. Cal., 2005)*

**PRIOR HISTORY:** *IMAX Corp. v. In-Three, Inc., 2005 U.S. Dist. LEXIS 24198 (C.D. Cal., June 21, 2005)*

COUNSEL: [*1] For Imax Corporation, Plaintiff: A Stephens Clay, Geoffrey K Gavin, James J Hefferan, Jr, Mitchell G Stockwell, R Charles Henn, Jr, Susan A Cahoon, Tonya Deem, Kilpatrick Stockton, Altanta, GA; Chad S Hummel, Noel Scott Cohen, Manatt Phelps & Phillips, Los Angeles, CA.

For Three-Dimensional Media Group Ltd, Plaintiff: Chad S Hummel, Noel Scott Cohen, Manatt Phelps & Phillips, Los Angeles, CA.

For In-Three Inc, Defendant: Heidi L Keefe, Mark R Weinstein, Samuel C O'Rourke, William Sloan Coats, White and Case, Palo Alto, CA.

For In-Three Inc, Counter Claimant: Craig W Clark, White and Case, Palo Alto, CA.

For Imax Corporation, Counter Defendant: A Stephens Clay, Geoffrey K Gavin, Tonya Deem, Kilpatrick Stockton, Altanta, GA.

JUDGES: JAMES W. McMAHON, United States Magistrate Judge.

OPINIONBY: JAMES W. McMAHON

OPINION:

ORDER RE DISCOVERY MOTION OF IN-THREE, INC.

On the court's own motion, the court dispenses with oral argument with respect to the motion of defendant In Three, Inc. ("In-Three") to compel responses to In-Three' s interrogatories and to compel production of documents and things, noticed for hearing on July 12, 2005. Local *Rule 7-15.* The court takes the motion under [*2] submission and decides it forthwith.

In-Three's motion to compel is granted in part and denied in part. Individual rulings are as follows:

Issue One -- Interrogatory No. 2:

In-Three's motion to compel a further response to this interrogatory is granted. The information sought in this interrogatory includes, inter alia, the precise date of conception of the patent at issue, the date of actual reduction to practice, the date of first public disclosure, and the date of first offer to sell or sale. These facts are "patently relevant." *Lamoureux v. Genesis Pharmacy Services, Inc. , 226 F.R.D. 154, 160 (D. Conn. 2004).* Nor is there any requirement that In-Three identify prior art or make other discovery before the court may order this present discovery. Plaintiffs Imax Corporation ("IMAX") and Three-Dimensional Media Group, Inc. ("3DMG") are ordered to answer the interrogatory without further objections.

Issue Two -- Request for Production Nos. 11 and 21:

In-Three's motion to compel is granted. The court recognizes that plaintiff 3DMG now claims that it **has** produced all responsive documents and that Request Nos. 11 and 21 are moot as to it. However, [*3] 3DMG made that assertion in the initial discovery stipulation.

(See In-Three's Notice of Motion, etc., filed June 21, 2005, but signed by 3DMG's counsel on June 20, 2005, page 16, lines 9-15, and page 27.) Immediately thereafter, 3DMG produced additional documents on June 20 and June 23, 2005. (Plaintiffs Supplemental Memorandum, etc., filed June 28, 2005, page 2.) Depending on one's point of view, this pattern of conduct may be characterized as a failure timely to conduct a diligent search for documents, an attempt to conduct so-called "rolling discovery," or a diligent attempt to comply with discovery obligations as and when additional responsive documents are discovered. However characterized, 3DMG's multiple and piece-meal discovery responses do not tend to engender trust that 3DMG has produced all responsive documents.

Plaintiffs 3DMG and IMAX are represented by the same counsel. As in most discovery disputes, this court is unable to determine whether the unresponsiveness of 3DMG to normal discovery requests is attributable to 3DMG or to its counsel. This is a long way of saying that IMAX is tarred with the same brush as 3DMG. IMAX claims that it has produced all responsive [*4] documents, but IMAX is represented by the same counsel as 3DMG. If the court cannot trust the responses of 3DMG, how can it trust the responses of MAX?

For the reasons stated above, plaintiffs IMAX and 3DMG are each ordered to make a further response and to produce all unproduced documents responsive to Request Nos. 11 and 21. If either plaintiff asserts that is has already produced all responsive documents, it may so state. As required by law, any such document response by counsel shall be subject to the requirements of *Rule 11(a)* and (b), Federal Rules of Civil Procedure.

Issue 3 -- Interrogatory No. 1:

In-Three's motion to compel a further response to this interrogatory is denied. On or about June 10, 2005, plaintiffs IMAX and 3DMG served first amended responses to this interrogatory, accompanied by a claim chart. The sufficiency of the First Amended Responses and the claim chart is not the subject of the present discovery stipulation and has not been briefed adequately. The court declines to rule upon the sufficiency of the discovery claim chart without full briefing.

Issue 4 -- Request for Production Nos. 2 and 17:

The court declines to rule at this time [*5] on the motion to compel the plaintiffs to produce a complete,

operational version of the plaintiffs alleged 2D-to-3D conversion software.

Plaintiffs IMAX and 3DMG apparently each claim that In-Three did not request production of the software and that, in any event, each is precluded from producing the software because of licensing agreements. The plaintiffs' first contention is wrong. The definition of "Document" in the request at issue encompasses "computer data and programs." (Declaration of Craig W. Clark, etc., filed June 28, 2005, Exh. A., page 5, line 5.) The two requests thus are sufficient to encompass a demand to produce a complete operational version of the software.

IMAX and 3DMG claim that unspecified and unproduced license agreements prohibit each from delivering the software to In-Three. That claim is based only upon a naked assertion of counsel unsupported by documents. (Declaration of Noel S. Cohen, filed June 21, 2005, page iii, paragraph 11.)

IMAX and 3DMG are ordered specifically to identify each program and each version of that program at issue and to produce the relevant license attributable to each program and version of the program. At that point, In-Three [*6] will be in a position to evaluate the licenses and, perhaps, to negotiate with the licensors for special licenses applicable to this litigation only. In the event that In-Three is unable to resolve this issue after appropriate examination of the licenses and negotiation with the licensors, In-Three may renew this motion to compel. Any such renewed motion to compel in which In-Three asserts that the court has the power to order delivery of a program to In-Three without a license or payment of a license fee by In-Three shall include notice of the motion to the affected licensors.

Plaintiffs IMAX and 3DMG are each ordered on or before July 22, 2005 to serve a verified supplemental interrogatory response and supplemental responses to the requests for production of documents and things discussed in this order and to produce all responsive and previously unproduced documents, including the licenses discussed in Issue 4, above.

IT IS SO ORDERED.

DATED: July 8, 2005

JAMES W. McMAHON

United States Magistrate Judge

# EXHIBIT Q

The opinion in support of the decision being
entered today was <u>not</u> written for publication
and is <u>no</u> binding precedent of the Board.

─────────────────

Paper No. 24

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

<u>Ex parte</u> CHARLES STACK



Appeal No. 2001-2051
Application 08/923,293'

ON BRIEF

Before THOMAS, BARRETT, and GROSS, <u>Administrative Patent Judges,.</u>

BARRETT, <u>Administratjye Patent Judge.</u>

<u>DECISION ON APPEAL</u> '

This is a decision on appeal under 35 U.S.C. § 134(a) from
the final rejection of claims 1-16.

We affirm-in-part.

─────────────────

'' Application for patent filed September 4, 1997, entitled
"System and Method for Providing Recommendation of Goods or
Services Based on Recorded Purchasing History."

- 1 -

PH 0026

Appeal No. 2001-2051
Application 08/923,293

<u>BACKGROUND</u>

The invention relates to a system, method, and computer program product for providing recommendations of goods and/or services of potential interest to customers based upon the customer's selection of other goods and/or services, in conjunction with a database of the purchasing history of other customers of the merchant. For example, if a user selects a specific book that he or she is interested in purchasing, the system searches the database to determine all previous customers who have purchased that book and, if those previous customers have also purchased other books in common, the books will be displayed. A common example today, although not known to this panel to be prior art to the present application, is found on websites such as "www.barnesandnoble.com" where selection of a book results in information on the book and a list of books under the heading of "People who bought this book also bought:."

Claim 16 is reproduced below.

16. A computer program product having a computer readable medium having computer readable code recorded thereon for the recommendation of goods or services in response to user input, comprising:

input means for receiving user commands representing any of a plurality of goods or services to be used as filter data;

database storage means for the retention of data concerning goods or services purchase decisions of prior users; and

– 2

PH 0027

Appeal No. 2001-2051
Application 08/923,293

means for filtering said database storage means using said inputted user commands to obtain recommendations to a user based on said inputted user commands.

The examiner relies on the following references:

Robinson                    5,790,426       August  4, 1998
                                            (filed April 30 1997)
Payton                      5,790,935       August  4, 1998
                                            (filed January 30 **1996)**

Claims 1-16 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Robinson and Payton.

We refer to the final rejection (Paper No. 14) (pages referred to as "FR ") and the examiner's answer (Paper No. 21) ( pages referred to as "EA ") for a statement of the examiner's rejection, and to the brief (Paper No. 20) (pages referred to as " Br") and reply brief (Paper No. 22) (pages referred to as "R B r " ) for a statement of appellant's arguments thereagainst.

OPINION

Grouping of claims

Appellant states that the claims are grouped to stand or fall together (Br5) and appears to argue mainly the limitations of independent claim 1. We find the limitations of the independent claims to be too different to be treated the same. Hence, we address the independent claims separately.

The references

Robinson discloses an automated collaborative filtering ( ACF) system for recommending an item to a first user based on

Appeal No. 2001-2051
Application 08/923,293

ratings of items by other system users (col. 1, lines 53-56). The
items may be any product or service that can be rated by a user (
col. 3, lines 24-27). The improvement involves determining a
similarity in preference of the user as compared to other users,
which is used to determine a subgroup of users having preferences
similar to the first user, and the ratings of the subgroup of
users are then used to recommend an item to the first user (
abstract; col. 6, lines 29-35). In order to determine a similarity
value, the first user and other user must have ratings in the
database for at least one common item (col. 6, lines 25-27 & 38-
41). The users in Robinson are required to actively participate by
entering their subjective ratings of items in the group, in
contrast to the disclosed invention which uses previous customer
activity history to reduce the degree of customer input in prior
art systems (specification, p. 2, lines 6-16).

Payton is directed to a virtual on-demand information system (
such as for movies, games, computer applications) wherein the
information is downloaded to a storage device at the subscriber
during non-peak hours based on an information filtering system
that predicts items the subscriber might like, and therefore
request. A subscriber database stores a subscriber profile which
includes a rating vector in which the user subscriber has rated
each of the items he or she has previously requested (col. 5,
lines 6-12). Alternatively, the system could just record the use

- 4 -

PH 0029

Appeal No. 2001-2051
Application 08/923,
293

of a requested item as a positive vote (col. 6, lines 41-42).
collaborative filtering system acts on the subscriber profiles
and predicts which of the available items the subscriber may be
interested in and request, and produces a list of those
recommended items for each subscriber (col. 5, lines 12-16). A
number of different collaborative filtering algorithms may be
used (col. 9, lines 4-61).

Analysis

The examiner finds that "Robinson does not expressly
disclose a database containing information pertaining to goods
and/or services purchasing history of previous customers, but
Payton teaches a database of ratings by previous customers (
column 5, lines 6-10)" (FR2; EA4). Appellant notes that the final
rejection acknowledges that Robinson does not disclose the claimed
database of customer purchase history (Br8). The examiner
responds that although Robinson does not expressly disclose such
a database (EA9):

> Robinson discloses the use of a database pertaining to the
> goods and/or services of previous users; since the previous
> users would in many cases have purchased the movies, books,
> or other goods and services they rated, Robinson's data in
> fact would pertain to their purchasing history, contrary to
> Appellant's assertion. Examiner wishes to note that "pertain"
> is a broad word, and that independent claims 1 and 7 specify
> only "information pertaining to goods and/or services
> purchasing history," without limitations to detailed
> information on which prior users have purchased which goods
> and/or services.

Appeal No. 2001-2051
Application 08/923,293

Appellant argues that the examiner's reasoning is contradictcry, but, in any event, the combination does not disclose using the specification of a good/service as filter data for a previous customer purchase history database (RBr3).

We find that Robinson does not disclose a database storing "information pertaining to goods and/or services purchasing history of previous customers" (claims 1 and 7) or "data concerning goods or services purchase decisions of prior users" (claim 16). Robinson is a recommendation service, not a sales service, and, therefore, it does not teach maintaining purchasing history. The examiner's reasoning that "pertaining to ... purchase history" is broad enough to read on the users' ratings of items in Robinson because, indirectly, the users had to have purchased the items somewhere, is not necessary since Payton expressly discloses that the ratings can be based on requested (purchased) items. We conclude it would have been obvious to one skilled in the art that the ratings in Robinson could be based on request (purchase) history in view of Payton.

The examiner finds that "Robinson discloses receiving customer commands specifying a particular good or service to be used as filter data (column 6, lines **24-35**; see also column 6, line 56, through column 7, line 46)" (FR2; EA3; <u>see alsо</u> EA10). Appellant argues that these passages deal with procedures for determining the proper subgroup of users (RBrl) and have "nothing

- 6 -

Appeal No. 2001-2051
Application 08/923,293

to do with entering a specified item as filter data for obtaining
recommendations of <u>other</u> goods and/or services from a previous
customer purchasing history database, as set forth in the claims
on appeal" (RBr2) and that there is no "user input" of a specified
item in Robinson (RBr2).

The examiner does not particularly point out what description
in Robinson is relied on as the customer commands. The only thing
we see that can possibly be the customer commands are the ratings
that the first user enters into the database at step 60 (col. 6,
lines 25-27 & 38-41), which ratings form the basis for the
recommendations. Payton also contains the same teachings about the
subscriber rating each of the items he or she has previously
requested (col. 5, lines 6-12), which ratings form the basis for
the recommendation. However, these ratings do not satisfy the
claim language of claims 1 and 7.

Claim 1 recites "specifying a particular good or service to
be used as filter data." While the ratings in Robinson and Payton
are used as filter data for a recommendation, the ratings do not
specify of a particular good or service to be used as filter data
for a recommendation. That is, the user does not specify a
particular good or service, such as specifying the book <u>Clear and
present Danger</u> in appellant's example of Fig. 3D, which is then
used as filter data to get a recommendation. The user gets a
recommendation based on past ratings without specifying a

**7**

Appeal No. 2001-2051
Application 08/923,293

particular good or service. Therefore, the rejection of claim 1 and its dependent claims 2-6 is reversed.

Claim 7 recites, _inter alia,_ an operator interface for inputting requests for "the purchase of goods or services," " means for processing inputted requests and for filtering relevant history information regarding said inputted requests from said database," and "whereby goods and/or services identification information corresponding to goods and/or services purchased by previous customers who have purchased the goods and/or services requested by said potential customers are transmitted to said operator interface for use by **said potential** customers" (emphasis added). This' requires filtering the purchasing history of previous customers based on "the goods and/or services requested by said potential customers," which we interpret to be equivalent to "specifying a particular **good** or service to be used as filter data," as recited in claim 1. As we found with respect to claim 1, neither Robinson nor Payton discloses specifying a particular good or service to be used as filter data for a recommendation. Therefore, the rejection of claim 7 and its dependent claims 8-15 is reversed.

Claim **16** is broader than claims 1 and 7 and, we conclude, would have been obvious over Robinson and Payton. The limitation of "input means for receiving user commands representing any of a plurality of goods or services to be used as filter data" is

- 8 -

PH 0033

Appeal No. 2001-2051
Application 08/923,293

broad enough to read on the input means for inputting ratings in Robinson and Payton, where the rated goods or services are used as filter data. Note that this limitation of claim 16 does not require "specifying a particular good or service to be used as filter data," as recited in claim 1, or filtering the purchasing history of previous customers based on "the goods and/or services requested by said potential customers," as recited in claim 7. Thus, claim 16 does not capture the idea of using a specified good or service as a filter for obtaining recommendations of other goods and services. Payton discloses "database storage means for the retention of data concerning goods, or services purchase decisions of prior users" because it stores a database of subscriber profile rating vectors which vectors contain data concerning items which the user subscriber has previously requested (col. 5, *lines* 6-12), where requested information (such as a pay-per-view movie) is purchased information, and the ratings can be based on the use of **a** requested item (col. **6**, lines 41-42), i.e., the ratings directly reflect purchase (request) decisions of previous users. For this reason, we disagree with **appellant's** argument that "neither Robinson nor Payton disclose a database of previous customer purchase history, as required by the claims on appeal" (RB2). It would **have** been obvious to one of ordinary skill *in* the art that the recommendation system in Robinson could be applied in a purchase

- 9 -

Appeal No. 2001-2051
Application 08/923,293

(request)/recommendation system as taught by Payton, although

Robinson does not appear to be necessary to the rejection. The

limitation of "means for filtering said database storage means

using said inputted user commands to obtain recommendations to a

user based on said inputted user commands" reads on the

recommendation systems of Robinson and Payton. For these reasons,

the rejection of claim 16 is sustained.

<u>CONCLUSION</u>

The rejection of claims 1-15 is reversed. The rejection of

claim 16 is affirmed.

No time period for taking any subsequent action in

connection with this appeal may be extended under 37 CFR §

1.136(a).

<u>AFFIRMED-IN-PART</u>

JAMES D. OMAS                          )
Administrative Patent Judge   )


                                       )
                                       } BOARD OF PATENT
L E E. BARRETT                   )        APPEALS
Administrative Patent Judge )            AND
                                              INTERFERENCES


ANITA PELLMAN GROSS              )
Administrative Patent Judge   )

- 10 -